(Slip Opinion)     OCTOBER TERM, 2016     1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LIGHTFOOT ET AL. *v*. CENDANT MORTGAGE CORP., DBA PHH MORTGAGE, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 14–1055.   Argued November 8, 2016—Decided January 18, 2017

The Federal National Mortgage Association (Fannie Mae) is a federally chartered corporation that participates in the secondary mortgage market.  By statute, Fannie Mae has the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal."  12 U. S. C. §1723a(a).  When petitioners Beverly Ann Hollis-Arrington and her daughter Crystal Lightfoot filed suit in state court alleging deficiencies in the refinancing, foreclosure, and sale of their home, Fannie Mae removed the case to federal court, relying on its sue-and-be-sued clause as the basis for jurisdiction.  The District Court denied a motion to remand the case to state court and later entered judgment against petitioners.  The Ninth Circuit affirmed.  In concluding that the District Court had jurisdiction under Fannie Mae's sue-and-be-sued clause, the court relied on *American Nat. Red Cross* v. *S. G.*, 505 U. S. 247, which it read as establishing a rule that when a sue-and-be-sued clause in a federal charter expressly authorizes suit in federal court, it confers jurisdiction on the federal courts.

*Held*: Fannie Mae's sue-and-be-sued clause does not grant federal courts jurisdiction over all cases involving Fannie Mae. Pp. 6–16.

   (a) This Court has addressed the jurisdictional reach of sue-and-be-sued clauses in five federal charters.  Three clauses were held to grant jurisdiction—*Osborn* v. *Bank of United States*, 9 Wheat. 738; *D'Oench, Duhme & Co.* v. *FDIC*, 315 U. S. 447; *American Nat. Red Cross* v. *S. G.*, 505 U. S. 247—while two were found wanting—*Bank of United States* v. *Deveaux*, 5 Cranch 61; *Bankers Trust Co.* v. *Texas & Pacific R. Co.*, 241 U. S. 295.  Describing the earlier decisions as this Court's "best efforts at divining congressional intent retrospec-

tively," 505 U. S., at 252, the Court in *Red Cross* concluded that those decisions "support the rule that a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts," *id.*, at 255.

In specifically mentioning the federal courts, Fannie Mae's sue-and-be-sued clause resembles the three clauses this Court has held confer jurisdiction. But unlike those clauses, Fannie Mae's clause adds the qualification "any court of competent jurisdiction," 12 U. S. C. §1723a(a). Thus, the outcome here turns on the meaning of "court of competent jurisdiction."

A court of competent jurisdiction is a court with the power to adjudicate the case before it, Black's Law Dictionary 431, and a court's subject-matter jurisdiction defines its power to hear cases, see *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89. It follows that a court of competent jurisdiction is a court with a grant of subject-matter jurisdiction covering the case before it. This Court has understood that phrase as a reference to a court with an existing source of subject-matter jurisdiction. See, *e.g.*, *Ex parte Phenix Ins. Co.*, 118 U. S. 610. On this understanding, Fannie Mae's sue-and-be-sued clause is most naturally read not to grant federal courts subject-matter jurisdiction over all cases involving Fannie Mae but to permit suit in any state or federal court already endowed with subject-matter jurisdiction.

*Red Cross* does not require a different result. It did not set out a rule that an express reference to the federal courts suffices to make a sue-and-be-sued clause a grant of federal jurisdiction. Rather, it restated "the basic rule" of *Deveaux* and *Osborn* that a sue-and-be-sued clause conferring only a general right to sue does not grant jurisdiction to the federal courts. 505 U. S., at 253. Pp. 6–11.

(b) Fannie Mae's arguments against reading its sue-and-be-sued clause as merely capacity conferring are unpersuasive. Its alternative readings of "court of competent jurisdiction" are premised on the already rejected reading of *Red Cross*. The prior construction canon of statutory interpretation does not apply because none of the cases on which Fannie Mae relies suggest that Congress in 1954 would have surveyed the jurisprudential landscape and necessarily concluded that the courts had already settled the question whether a sue-and-be-sued clause containing the phrase "court of competent jurisdiction" confers jurisdiction on the federal courts. Finally, Fannie Mae's appeals to congressional purpose do not call into question the plain text reading of its sue-and-be-sued clause. Pp. 11–16.

769 F. 3d 681, reversed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 14–1055

_____

## CRYSTAL MONIQUE LIGHTFOOT, ET AL., PETITIONERS v. CENDANT MORTGAGE CORPORATION, DBA PHH MORTGAGE ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 18, 2017]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The corporate charter of the Federal National Mortgage Association, known as Fannie Mae, authorizes Fannie Mae "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U. S. C. §1723a(a). This case presents the question whether this sue-and-be-sued clause grants federal district courts jurisdiction over cases involving Fannie Mae. We hold that it does not.

I

A

During the Great Depression, the Federal Government worked to stabilize and strengthen the residential mortgage market. Among other things, it took steps to increase liquidity (reasonably available funding) in the mortgage market. These efforts included the creation of the Federal Home Loan Banks, which provide credit to member institutions to finance affordable housing and economic development projects, and the Federal Housing Administration (FHA), which insures residential mort-

gages. See Dept. of Housing and Urban Development, Background and History of the Federal National Mortgage Association 1–7, A4 (1966).

Also as part of these efforts, Title III of the National Housing Act (1934 Act) authorized the Administrator of the newly created FHA to establish "national mortgage associations" that could "purchase and sell [certain] first mortgages and such other first liens" and "borrow money for such purposes." §301(a), 48 Stat. 1252–1253. The associations were endowed with certain powers, including the power to "sue and be sued, complain and defend, in any court of law or equity, State or Federal." §301(c), *id.*, at 1253.

In 1938, the FHA Administrator exercised that authority and chartered the Federal National Mortgage Association. Avoiding a mouthful of an acronym (FNMA), it went by Fannie Mae. See, *e.g.,* Washington Post, July 14, 1940, p. P2 ("'Fanny May'"); N. Y. Times, Mar. 23, 1950, p. 48 ("'Fannie Mae'"). As originally chartered, Fannie Mae was wholly owned by the Federal Government and had three objectives: to "establish a market for [FHA-insured] first mortgages" covering new housing construction, to "facilitate the construction and financing of economically sound rental housing projects," and to "make [the bonds it issued] available to . . . investors." Fed. Nat. Mortgage Assn. Information Regarding the Activities of the Assn. 1 (Circular No. 1, 1938).

Fannie Mae was rechartered in 1954. Housing Act of 1954 (1954 Act), §201, 68 Stat. 613. No longer wholly Government owned, Fannie Mae had mixed ownership: Private shareholders held its common stock and the Department of the Treasury held its preferred stock. The 1954 Act required the Secretary of the Treasury to allow Fannie Mae to repurchase that stock. See *id.*, at 613–615. It expected that Fannie Mae would repurchase all of its preferred stock and that legislation would then be enacted

to turn Fannie Mae over to the private stockholders. From then on, Fannie Mae's duties would "be carried out by a privately owned and privately financed corporation." *Id.*, at 615. Along with these structural changes, the 1954 Act replaced Fannie Mae's initial set of powers with a more detailed list. In doing so, it revised the sue-and-be-sued clause to give Fannie Mae the power "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." *Id.*, at 620.

In 1968, Fannie Mae became fully privately owned and relinquished part of its portfolio to its new spinoff, the Government National Mortgage Association (known as Ginnie Mae). See Housing and Urban Development Act of 1968 (1968 Act), 82 Stat. 536. Fannie Mae "continue[d] to operate the secondary market operations" but became "a Government-sponsored private corporation." 12 U. S. C. §1716b. Ginnie Mae "remain[ed] in the Government" and took over "the special assistance functions and management and liquidating functions." *Ibid.* Ginnie Mae received the same set of powers as Fannie Mae. See §1723(a); see also 1968 Act, §802(z), 82 Stat. 540 (minor revisions to §1723a(a)).

This general structure remains in place. Fannie Mae continues to participate in the secondary mortgage market. It purchases mortgages that meet its eligibility criteria, packages them into mortgage-backed securities, and sells those securities to investors, and it invests in mortgage-backed securities itself. One of those mortgage purchases led to Fannie Mae's entanglement in this case.

B

Beverly Ann Hollis-Arrington refinanced her mortgage with Cendant Mortgage Corporation (Cendant) in the summer of 1999. Fannie Mae then bought the mortgage, while Cendant continued to service it. Unable to make her payments, Hollis-Arrington pursued a forbearance ar-

rangement with Cendant. No agreement materialized, and the home entered foreclosure. Around this time, Cendant repurchased the mortgage from Fannie Mae because it did not meet Fannie Mae's credit standards.

To stave off the foreclosure, Hollis-Arrington and her daughter, Crystal Lightfoot, pursued bankruptcy and transferred the property between themselves. These efforts failed, and the home was sold at a trustee's sale in 2001. The two then took to the courts to try to undo the foreclosure and sale.

After two unsuccessful federal suits, the pair filed this suit in state court. They alleged that deficiencies in the refinancing, foreclosure, and sale of their home entitled them to relief against Fannie Mae. Their claims against other defendants are not relevant here.

Fannie Mae removed the case to federal court under 28 U. S. C. §1441(a), which permits a defendant to remove from state to federal court "any civil action" over which the federal district courts "have original jurisdiction." It relied on its sue-and-be-sued clause as the basis for jurisdiction. The District Court denied a motion to remand the case to state court.

The District Court then dismissed the claims against Fannie Mae on claim preclusion grounds. After a series of motions, rulings, and appeals not related to the issue here, the District Court entered final judgment. Hollis-Arrington and Lightfoot immediately moved to set aside the judgment under Federal Rule of Civil Procedure 60(b), alleging "fraud upon the court." App. 95–110. The District Court denied the motion.

The Ninth Circuit affirmed the dismissal of the case and the denial of the Rule 60(b) motion. 465 Fed. Appx. 668 (2012). After Hollis-Arrington and Lightfoot sought rehearing, the Ninth Circuit withdrew its opinion and ordered briefing on the question whether the District Court had jurisdiction over the case under Fannie Mae's sue-

and-be-sued clause. 769 F. 3d 681, 682–683 (2014).

A divided panel affirmed the District Court's judgment. The majority relied on *American Nat. Red Cross* v. *S. G.*, 505 U. S. 247 (1992). It read that decision to have established a "rule [that] resolves this case": When a sue-and-be-sued clause in a federal charter expressly authorizes suit in federal courts, it confers jurisdiction on the federal courts. 769 F. 3d, at 684. The dissent instead read *Red Cross* as setting out only a "'default rule'" that provides a "starting point for [the] analysis." 769 F. 3d, at 692 (opinion of Stein, J.). It read "any court of competent jurisdiction" in Fannie Mae's sue-and-be-sued clause to overcome that default rule by requiring an independent source for jurisdiction in cases involving Fannie Mae. *Ibid.*

Two Circuits have likewise concluded that the language in Fannie Mae's sue-and-be-sued clause grants jurisdiction to federal courts. See *Federal Home Loan Bank of Boston* v. *Moody's Corp.*, 821 F. 3d 102 (CA1 2016) (Federal Home Loan Bank of Boston's identical sue-and-be-sued clause); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Fed. Nat. Mortgage Assn.* v. *Raines*, 534 F. 3d 779 (CADC 2008) (Fannie Mae's sue-and-be-sued clause). Four Circuits have disagreed, finding that similar language did not grant jurisdiction. See *Western Securities Co.* v. *Derwinski*, 937 F. 2d 1276 (CA7 1991) (Under 38 U. S. C. §1820(a)(1) (1988 ed.), Secretary of Veterans Affairs' authority to "sue and be sued . . . in any court of competent jurisdiction, State or Federal"); *C. H. Sanders Co.* v. *BHAP Housing Development Fund Co.*, 903 F. 2d 114 (CA2 1990) (Under 12 U. S. C. §1702 (1988 ed.), Secretary of Housing and Urban Development's authority "in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal"); *Industrial Indemnity, Inc.* v. *Landrieu*, 615 F. 2d 644 (CA5 1980) (*per curiam*) (similar); *Lindy* v. *Lynn*, 501 F. 2d 1367 (CA3 1974) (similar).

We granted certiorari, 579 U. S. ___ (2016), and now reverse.

## II

Fannie Mae's sue-and-be-sued clause authorizes it "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal." 12 U. S. C. §1723a(a). As in other federal corporate charters, this language serves the uncontroversial function of clarifying Fannie Mae's capacity to bring suit and to be sued. See *Bank of United States* v. *Deveaux*, 5 Cranch 61, 85–86 (1809). The question here is whether Fannie Mae's sue-and-be-sued clause goes further and grants federal courts jurisdiction over all cases involving Fannie Mae.

### A

In answering this question, "we do not face a clean slate." *Red Cross*, 505 U. S., at 252. This Court has addressed the jurisdictional reach of sue-and-be-sued clauses in five federal charters. Three clauses were held to grant jurisdiction, while two were found wanting.

The first discussion of sue-and-be-sued clauses came in a pair of opinions by Chief Justice Marshall. The charter of the first Bank of the United States allowed it "'to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever.'" *Deveaux*, 5 Cranch, at 85. Another provision allowed suits in federal court against certain bank officials, suggesting "the right to sue does not imply a right to sue in the courts of the union, unless it be expressed." *Id.,* at 86. In light of this language, the Court held that the first Bank of the United States had "no right . . . to sue in the federal courts." *Ibid.* The Court concluded that the second Bank of the United States was not similarly disabled. Its charter allowed it "'to sue and be sued, plead and be impleaded, answer and be answered,

defend and be defended, in all State Courts having competent jurisdiction, and in any Circuit Court of the United States.'" *Osborn* v. *Bank of United States,* 9 Wheat. 738, 817 (1824). The Court took from *Deveaux* "that a general capacity in the Bank to sue, without mentioning the Courts of the Union, may not give a right to sue in those Courts." 9 Wheat., at 818. By contrast, the second Bank's charter did grant jurisdiction to the federal circuit courts because it used "words expressly conferring a right to sue in those Courts." *Ibid.*

A mortgage dispute between a railroad and its creditor led to the next consideration of this issue. The Texas and Pacific Railway Company's federal charter authorized it "'to sue and be sued, plead and be impleaded, defend and be defended, in all courts of law and equity within the United States.'" *Bankers Trust Co.* v. *Texas & Pacific R. Co.*, 241 U. S. 295, 302 (1916). This Court held that the clause had "the same generality and natural import as" the clause in *Deveaux.* 241 U. S., at 304. Thus, "all that was intended was to render this corporation capable of suing and being sued by its corporate name in any court . . . whose jurisdiction as otherwise competently defined was adequate to the occasion." *Id.,* at 303.

Another lending dispute, involving defaulted bonds, led to the next statement on this issue. The Federal Deposit Insurance Corporation's (FDIC) sue-and-be-sued clause authorized it "[t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal." 12 U. S. C. §264(j) (1940 ed.). In *D'Oench, Duhme & Co.* v. *FDIC*, 315 U. S. 447, 455 (1942), this Court held that federal jurisdiction over the case was based on the FDIC's sue-and-be-sued clause. See *Red Cross*, 505 U. S., at 254 (expressing no "doubt that the Court held federal jurisdiction to rest on the" sue-and-be-sued clause).

This Court's most recent discussion of a sue-and-be-sued clause came in *Red Cross*, which involved a state-law tort

suit related to a contaminated blood transfusion. It de-scribed the previous quartet of decisions as reflecting this Court's "best efforts at divining congressional intent retro-spectively," efforts that had put "Congress on prospective notice of the language necessary and sufficient to confer jurisdiction." *Id.,* at 252. Those decisions "support the rule that a congressional charter's 'sue and be sued' provi-sion may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." *Id.,* at 255. Under that rule, the Court explained, the result was "clear." *Id.,* at 257. The Red Cross' sue-and-be-sued clause, which permits it to "sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States," 36 U. S. C. §300105(a)(5), confers jurisdiction. *Red Cross*, 505 U. S., at 257. "In expressly authorizing [suits] in federal courts, using language . . . in all relevant respects identical to [the clause in *D'Oench*] on which [the Court] based a holding of federal jurisdiction just five years before [its enactment], the provision ex-tends beyond a mere grant of general corporate capacity to sue, and suffices to confer federal jurisdiction." *Ibid.*

Armed with these earlier cases, as synthesized by *Red Cross*, we turn to the sue-and-be-sued clause at issue here.

B

Fannie Mae's sue-and-be-sued clause resembles the clauses this Court has held confer jurisdiction in one important respect. In authorizing Fannie Mae "to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal," 12 U. S. C. §1723a(a), it "specifically mentions the federal courts." *Red Cross,* 505 U. S., at 255. This mention of the federal courts means that Fannie Mae's charter clears a hurdle that the clauses in *Deveaux* and *Bankers Trust* did not.

But Fannie Mae's clause differs in a material respect from the three clauses the Court has held sufficient to

grant federal jurisdiction. Those clauses referred to suits in the federal courts without qualification. In contrast, Fannie Mae's sue-and-be-sued clause refers to "any *court of competent jurisdiction*, State or Federal." §1723a(a) (emphasis added). Because this sue-and-be-sued clause is not "in all relevant respects identical" to a clause already held to grant federal jurisdiction, *Red Cross*, 505 U. S., at 257, this case cannot be resolved by a simple comparison. The outcome instead turns on the meaning of "court of competent jurisdiction" in Fannie Mae's sue-and-be-sued clause.

A court of competent jurisdiction is a court with the power to adjudicate the case before it. See Black's Law Dictionary 431 (10th ed. 2014) ("[a] court that has the power and authority to do a particular act; one recognized by law as possessing the right to adjudicate a controversy"). And a court's subject-matter jurisdiction defines its power to hear cases. See *Steel Co.* v. *Citizens for Better Environment*, 523 U. S. 83, 89 (1998) (Subject-matter jurisdiction is "the courts' statutory or constitutional power to adjudicate the case" (emphasis deleted)); *Wachovia Bank, N. A.* v. *Schmidt*, 546 U. S. 303, 316 (2006) ("Subject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases"). It follows that a court of competent jurisdiction is a court with a grant of subject-matter jurisdiction covering the case before it. Cf. *Pennoyer* v. *Neff*, 95 U. S. 714, 733 (1878) ("[T]here must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit").

As a result, this Court has understood the phrase "court of competent jurisdiction" as a reference to a court with an existing source of subject-matter jurisdiction. *Ex parte Phenix Ins. Co.*, 118 U. S. 610 (1886), provides an example. There, the Court explained that a statute "providing for the transfer to a trustee of the interest of the owner in the

vessel and freight, provides only that the trustee may 'be appointed by any court of competent jurisdiction,' leaving the question of such competency to depend on other provisions of law." *Id.,* at 617.  See also *Shoshone Mining Co.* v. *Rutter,* 177 U. S. 505, 506–507 (1900) (statute authorizing suit "'in a court of competent jurisdiction' . . . unquestionably meant that the competency of the court should be determined by rules theretofore prescribed in respect to the jurisdiction of the Federal courts").  *Califano* v. *Sanders,* 430 U. S. 99 (1977), provides another.  It held that §10 of the Administrative Procedure Act, codified in 5 U. S. C. §§701–704, did not contain "an implied grant of subject-matter jurisdiction to review agency actions."  430 U. S., at 105.  In noting that "the actual text . . . nowhere contains an explicit grant of jurisdiction," the Court pointed to two clauses requiring "judicial review . . . to proceed 'in a court specified by statute' or 'in a court of competent jurisdiction'" and stated that both "seem to look to outside sources of jurisdictional authority." *Id.,* at 105–106, and n. 6.

On this understanding, Fannie Mae's sue-and-be-sued clause is most naturally read not to grant federal courts subject-matter jurisdiction over all cases involving Fannie Mae.  In authorizing Fannie Mae to sue and be sued "in any court of competent jurisdiction, State or Federal," it permits suit in any state or federal court already endowed with subject-matter jurisdiction over the suit.

C

*Red Cross* does not require a different result.  Some, including the lower courts here, have understood it to set out a rule that an express reference to the federal courts suffices to make a sue-and-be-sued clause a grant of federal jurisdiction.  *Red Cross* contains no such rule.

By its own terms, the rule *Red Cross* restates is "the basic rule" drawn in *Deveaux* and *Osborn* that a sue-and-be-sued clause conferring only a general right to sue does

not grant jurisdiction to the federal courts. *Red Cross*, 505 U. S., at 253. Each mention of a "rule" refers back to this principle. See *id.,* at 255 (reading this Court's sue-and-be-sued clause cases to "support the rule that a . . . 'sue and be sued' provision *may* be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts" (emphasis added)); *id.,* at 256 (*Bankers Trust* applied "the rule thus established" to hold that the railroad's sue-and-be-sued clause did not confer jurisdiction); 505 U. S., at 257 (finding the result "clear" under the "rule established in these cases" because the charter "expressly authoriz[es]" suits in federal courts in a clause "in all relevant respects identical" to one already found to confer jurisdiction).

True enough, the dissent thought *Red Cross* established a broad rule. See 505 U. S., at 271–272 (opinion of Scalia, J.) (describing *Red Cross* as announcing a "rule . . . that any grant of a general capacity to sue with mention of federal courts will suffice to confer jurisdiction" (emphasis deleted)). The certainty of the dissent may explain the lower court decisions adopting a broader reading of *Red Cross*. But *Red Cross* itself establishes no such rule. And such a rule is hard to square with the opinion's thorough consideration of the contrary arguments based in text, purpose, and legislative history. See *id.,* at 258–263.

Nothing in *Red Cross* suggests that courts should ignore "the ordinary sense of the language used," *id.,* at 263, when confronted with a federal charter's sue-and-be-sued clause that expressly references the federal courts, but only those that are courts "of competent jurisdiction."

## III

Fannie Mae, preferring to be in federal court, raises several arguments against reading its sue-and-be-sued clause as merely capacity conferring. None are persuasive.

### A

Fannie Mae first offers several alternative readings of "court of competent jurisdiction." It suggests that the phrase might refer to a court with personal jurisdiction over the parties before it, a court of proper venue, or a court of general, rather than specialized, jurisdiction. Brief for Respondents 41–45.

At bottom, Fannie Mae's efforts on this front are premised on the reading of *Red Cross* rejected above. In its view, an express reference to the federal courts suffices to confer subject-matter jurisdiction on federal courts. It sees its only remaining task as explaining why that would not render "court of competent jurisdiction" superfluous. See Tr. of Oral Arg. 29–30. But the fact that a sue-and-be-sued clause references the federal courts does not resolve the jurisdictional question. Thus, arguments as to why the phrase "court of competent jurisdiction" could still have meaning if it does not carry its ordinary meaning are beside the point.

Moreover, even if the phrase carries additional meaning, that would not further Fannie Mae's argument. Take its suggestion that a "court of competent jurisdiction" is a court with personal jurisdiction. A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case. See *Ruhrgas AG* v. *Marathon Oil Co.*, 526 U. S. 574, 583–585 (1999). Recognizing as much, this Court has stated that the phrase "court of competent jurisdiction," while "usually used to refer to subject-matter jurisdiction, has also been used on occasion to refer to a court's jurisdiction over the defendant's person." *United States* v. *Morton*, 467 U. S. 822, 828 (1984) (footnote omitted). See also *Blackmar* v. *Guerre*, 342 U. S. 512, 516 (1952). But nothing in Fannie Mae's sue-and-be-sued clause suggests that the reference to "court of competent jurisdiction" refers only to a court with

personal jurisdiction over the parties before it. At most then, this point might support reading the phrase to refer to both subject-matter and personal jurisdiction. That does not help Fannie Mae. So long as the sue-and-be-sued clause refers to an outside source of subject-matter jurisdiction, it does not confer subject-matter jurisdiction.

B

Fannie Mae next claims that, by the time its sue-and-be-sued clause was enacted in 1954, courts had interpreted provisions containing the phrase "court of competent jurisdiction" to grant jurisdiction and that Congress was entitled to rely on those interpretations. This argument invokes the prior construction canon of statutory interpretation. The canon teaches that if courts have settled the meaning of an existing provision, the enactment of a new provision that mirrors the existing statutory text indicates, as a general matter, that the new provision has that same meaning. See *Bragdon* v. *Abbott*, 524 U. S. 624, 645 (1998).

Fannie Mae points to cases discussing three types of statutory provisions that, in its view, show that the phrase "court of competent jurisdiction" had acquired a settled meaning by 1954.

The first pair addresses the FHA's sue-and-be-sued clause. See 12 U. S. C. §1702 ("sue and be sued in any court of competent jurisdiction, State or Federal"). Two Court of Appeals decisions in the 1940's concluded that the FHA sue-and-be-sued clause overrode the general rule, today found in 28 U. S. C. §§1346(a)(2), 1491, that monetary claims against the United States exceeding $10,000 must be brought in the Court of Federal Claims, rather than the federal district courts. See *Ferguson* v. *Union Nat. Bank of Clarksburg*, 126 F. 2d 753, 755–757 (CA4 1942); *George H. Evans & Co.* v. *United States*, 169 F. 2d 500, 502 (CA3 1948). These courts did not state that their

jurisdiction was founded on the sue-and-be-sued clause, as opposed to statutes governing the original jurisdiction of the federal district courts. See, *e.g.,* 28 U. S. C. §41(a) (1946 ed.). Thus, even assuming that two appellate court cases can "'settle'" an issue, A. Scalia & B. Garner, Reading Law 325 (2012), these two cases did not because they did not speak to the question here.

The second set of cases addresses provisions authorizing suit for a violation of a statute. One arose under the Fair Labor Standards Act of 1938, which authorizes employees to sue for violations of the Act in "any . . . court of competent jurisdiction." §6(d)(1), 88 Stat. 61, 29 U. S. C. §216(b). This Court, in its description of the facts, stated that "[j]urisdiction of the action was conferred by . . . 28 U. S. C. §41(8), and . . . 29 U. S. C. §216(b)." *Williams* v. *Jacksonville Terminal Co.*, 315 U. S. 386, 390 (1942). This brief, ambiguous statement did not settle the meaning of §216(b), and thus did not settle the meaning of the phrase "court of competent jurisdiction." The other cases in this set dealt with the Housing and Rent Act of 1947. As enacted, the statute permitted suit in "any Federal, State, or Territorial court of competent jurisdiction." §206(b), 61 Stat. 199. Some courts read §206 not to confer jurisdiction and instead assessed their jurisdiction under the federal-question jurisdiction statute. See, *e.g., Schuman* v. *Greenberg*, 100 F. Supp. 187, 189 (NJ 1951) (collecting cases). At the time, that statute carried an amount-in-controversy requirement, 28 U. S. C. §41(1) (1946 ed.), and so some cases were dismissed or remanded to state court for lack of federal jurisdiction. Congress later amended §206 to permit suit "in any Federal court of competent jurisdiction regardless of the amount involved." Defense Production Act Amendments of 1951, §204, 65 Stat. 147. Congress' elimination of the amount-in-controversy requirement suggests, if anything, it understood that "court of competent jurisdiction" could be read to require an

outside source of jurisdiction.

The third set of cases interpreted provisions making federal jurisdiction over certain causes of action exclusive. Brief for Respondents 36–37. Those cases confirm that the provisions require suit to be brought in federal courts but do not discuss the basis for federal jurisdiction.

In sum, none of the cases on which Fannie Mae relies suggest that Congress in 1954 would have surveyed the jurisprudential landscape and necessarily concluded that the courts had already settled the question whether a sue-and-be-sued clause containing the phrase "court of competent jurisdiction" confers jurisdiction on the federal courts.

## C

Fannie Mae ends with an appeal to congressional purpose, or, more accurately, a lack of congressional purpose.

It argues that its original sue-and-be-sued clause, enacted in 1934, granted jurisdiction to federal courts and that there is no indication that Congress wanted to change the status quo in 1954. The addition in 1954 of "court of competent jurisdiction," a phrase that, as discussed, carries a clear meaning, means that the current sue-and-be-sued clause does not confer jurisdiction. An indication whether that meaning was understood as a change from the 1934 Act is not required.*

Fannie Mae next points to its sibling rival, the Federal Home Loan Mortgage Corporation, known as Freddie Mac. The two share parallel authority to compete in the second-

---

\*The legislative history of the 1934 Act provides some reason to question Fannie Mae's premise about Congress' view of the status quo under the 1934 Act. During debate on this provision, Senator Logan asked Senator Bulkley, the chair of the subcommittee with authority over the bill, about the original sue-and-be-sued clause. Senator Bulkley explained that it merely conferred a capacity to sue and be sued "and [did] not confe[r] a right to go into a Federal court where it would not otherwise exist." 78 Cong. Rec. 12008 (1934).

ary mortgage market. Compare 12 U. S. C. §§1717(b)(2)–(6) (Fannie Mae) with §1454(a) (Freddie Mac). Suits involving Freddie Mac may be brought in federal court. See §1452(c) ("to sue and be sued, complain and defend, in any State, Federal, or other court"); §1452(f) (providing that Freddie Mac is a federal agency under 28 U. S. C. §§1345, 1442, that civil actions to which Freddie Mac is a party arise under federal law, and that Freddie Mac may remove cases to federal district court before trial).

Fannie Mae argues there is no good reason to think that Congress gave Freddie Mac fuller access to the federal courts than it has. Leaving aside the clear textual indications suggesting Congress did just that, a plausible reason does exist. In 1970, when Freddie Mac's sue-and-be-sued clause and related jurisdictional provisions were enacted, Freddie Mac was a Government-owned corporation. See Emergency Home Finance Act of 1970, §304(a), 84 Stat. 454. Fannie Mae, on the other hand, had already transitioned into a privately owned corporation. Fannie Mae's argument on this front, moreover, contains a deeper flaw. The doors to federal court remain open to Fannie Mae through diversity and federal-question jurisdiction. Fannie Mae provides no reason to think that in other cases, involving only state-law claims, access to the federal courts gives Freddie Mac an unintended competitive advantage over Fannie Mae that Congress would have wanted to avoid. Indeed, the usual assumption is that state courts are up to the task of adjudicating their own laws. Cf. *Gulf Offshore Co.* v. *Mobil Oil Corp.*, 453 U. S. 473, 483–484 (1981).

## IV

The judgment of the Ninth Circuit is reversed.

*It is so ordered.*