NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0124n.06

Case No. 24-1351

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 04, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| IAN JASON LIPSKY, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: SUTTON, Chief Judge; GRIFFIN and MATHIS, Circuit Judges.

SUTTON, Chief Judge. Ian Lipsky pleaded guilty to two counts of child sexual exploitation. The district court sentenced him to a below-Guidelines term of 360 months and ordered him to pay two $5,000 special assessments. He challenges his sentence and the special assessments. We reject his challenges and affirm.

This case emerges out of a 2020 law-enforcement raid on a home in California. Officers expected to find someone involved in the distribution of child pornography. What they found instead was a young man who had been sexually abused as a child. He told the officers that he knew some "really bad guys" who target children, including "Chris," an older man he met in an online chatroom. R.37 at 7 ¶ 15. When he was 14 years old, he explained, "Chris" convinced him to meet in person, showed him "his collection" of child pornography, then raped him. R.37 at 7 ¶ 15. He said that "Chris" once lived nearby but had moved to Michigan.

A few months later, the officers found "Chris." His real name was Ian Lipsky, and the young man they met in California was not his only victim. A search of Lipsky's home revealed a

cache of child pornography—more than a hundred videos—and a slew of explicit messages Lipsky had sent to and received from a number of children over the past seven years. All told, Lipsky sexually abused two children and convinced six more to send him sexual photographs and videos.

Lipsky pleaded guilty to two counts of child sexual exploitation. *See* 18 U.S.C. § 2251(a). The Guidelines recommended a term of 720 months, the statutory maximum. The district court imposed a below-Guidelines sentence of 360 months and ordered Lipsky to pay two $5,000 special assessments.

On appeal, Lipsky challenges the length of his sentence and the special assessments.

*Substantive reasonableness*. Lipsky challenges his sentence as substantively unreasonable, in essence claiming that it is "too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). In this "highly deferential review," we ask whether the court "placed too much weight" on some sentencing factors or "too little on others." *Id.* A within-Guidelines sentence is presumptively reasonable. *See Rita v. United States*, 551 U.S. 338, 347 (2007). That presumption grows even stronger in cases like this one, where the defendant challenges a below-Guidelines sentence. *See United States v. Lynde*, 926 F.3d 275, 279 (6th Cir. 2019).

Lipsky cannot overcome that presumption. The district court carefully weighed the relevant factors. It considered the "serial nature" of Lipsky's "serious" offenses. R.51 at 23–24. It noted that Lipsky, in his allocution, had denied that he had hurt his victims, a sign that he still had "no idea" of the "lifelong wounds" he had inflicted. R.51 at 27. And it recognized the "need for the law to reflect" the "seriousness" of Lipsky's crimes. R.51 at 34. At the same time, the court weighed "the challenges in [Lipsky's] life," the fact that this was his first "opportunity to engage in sex-offender treatment," and the reality that, at his age (51), he would be spending "most of the rest of his good years" in prison. R.51 at 23, 26, 28. It noted, in particular, that a quirk of

the Guidelines meant that Lipsky, a first-time offender, would have had a years-shorter recommended sentence "if he had . . . been convicted of a prior sex crime." R.51 at 26. All in all, the district court reasonably varied downward to impose a sentence of 360 months, what amounted to half of the recommended Guidelines sentence of 720 months, and declined to vary further.

Lipsky claims that a further reduction was required—that the district court should have given more weight to his "mental health issues," which "had a significant impact on his arrested development." Appellant's Br. 12. But the court reasonably concluded that the "overall seriousness of [Lipsky's] behavior, the serial nature of it, and the need for the law to reflect that seriousness" counseled against a greater variance. R.51 at 34. We see no sound basis for second-guessing that judgment.

*Permissibility of the special assessments*. Lipsky next challenges the district court's decision to impose two $5,000 special assessments—one for each count—under the Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22, 129 Stat. 227. Because Lipsky did not challenge the imposition of these two special assessments below, we review this argument only for plain error. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

The Act establishes a fund to support state and local programs for victims of trafficking and sex crimes. 18 U.S.C. § 3014(e). To support the fund, the Act directs courts to impose a special assessment on defendants covered by the Act. A district court, the Act says, must "assess an amount of $5,000 on any non-indigent person . . . convicted of an offense" under various statutory provisions, including those "relating to sexual exploitation and other abuse of children." *Id.* § 3014(a). This provision has spawned a debate. Should a special assessment under § 3014 be imposed only once *per case*? Or should a special assessment under § 3014 be imposed once *per eligible count*? The Second Circuit has held that § 3014 permits only one assessment per

3

defendant, *United States v. Haverkamp*, 958 F.3d 145, 148–50 (2d Cir. 2020), while the Third, Ninth, and Tenth Circuits have concluded that courts must impose separate assessments for each qualifying conviction, *United States v. Johnman*, 948 F.3d 612, 616–21 (3d Cir. 2020); *United States v. Randall*, 34 F.4th 867, 874–77 (9th Cir. 2022); *United States v. Warrington*, 78 F.4th 1158, 1167–71 (10th Cir. 2023).

We need not pick a side today. If our court has not ruled on an issue, the existence of disagreement among our sister circuits "precludes a finding of plain error," as it demonstrates that the issue is "subject to reasonable dispute." *United States v. Johnson*, 95 F.4th 404, 416 (6th Cir. 2024) (quotation omitted).

Lipsky counters that a statute's "clear and unambiguous" directive should allow us to find plain error, whether other courts agree or not. Reply Br. 4. Even that rule does not help him, however, as it is hardly obvious that § 3014 permits only one special assessment per case. The reality that § 3014 refers to one assessment ("*an* amount of $5,000" for "*an* offense," 18 U.S.C. § 3014(a)) sheds no light on whether that single assessment should be imposed per case or per count. Worse still for Lipsky, he cannot adequately account for the relationship between § 3014 and its neighbor. Any assessment under § 3014 is imposed "in addition to the assessment imposed under" § 3013. *Id.* When Congress enacted § 3014 in 2015, it was well-settled that § 3013— which also requires district courts to assess an amount for "an offense"—is imposed per count, not per case. *Rutledge v. United States*, 517 U.S. 292, 301 (1996). That this new provision mirrors the old one offers a good reason to assume it operates in the same way. *See Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95–96 (2017) (prior-construction canon). Lipsky cannot show plain error, and indeed it is doubtful he can show error at all.

*Lipsky's non-indigency*.  Recall that the Act limits special assessments to "non-indigent" defendants, 18 U.S.C. § 3014(a), those who "not only live[] in poverty but also lack[] the means—e.g., skills or education—to exit poverty," *United States v. Shepherd*, 922 F.3d 753, 758 (6th Cir. 2019).  Lipsky contends that the district court erred in finding him non-indigent when imposing the two special assessments.  Because Lipsky failed to raise this objection below, we again review it only for plain error.

The district court did not plainly err in finding Lipsky non-indigent.  The record shows that Lipsky had significant assets at sentencing, including a vehicle worth approximately $20,000 and a 401(k)-account containing $50,000.  While he also had some debts, including $7,000 in credit-card debt, his net-worth remained in the black.  The district court reasonably concluded that Lipsky did not live in poverty.

True, as Lipsky notes, counsel was appointed on his behalf.  But that implies only that he was "financially unable to obtain adequate representation," 18 U.S.C. § 3006A(a), not that he is "indigen[t] or destitut[e]," *Shepherd*, 922 F.3d at 759 (quotation omitted).  A criminal defendant may be "unable to pay a six-figure legal bill and yet still possess the means of subsistence." *Id.* The reality that Lipsky has a court-appointed attorney does not suffice "to support a finding of indigency." *Id.*  No plain error occurred.

For these reasons, we affirm.